# Johns *versus* Tiers, et al.

1. When by procurement and with the consent of his guardian, a minor's title to realty is divested in any other mode than prescribed by law, the purchaser, taking title with knowledge of the facts, cannot claim to be a *bona fide* holder thereof in his own right, unless the minor after attaining his majority has ratified the sale.

2. The powers of a guardian in respect of the sale of his ward's realty are purely statutory, and, by express terms of the statutes relating thereto can only be exercised under and subject to the authority and supervision of the Orphans' Court. Only as the agent of that court does the guardian derive his authority over his ward's estate.

November 4th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county :* Of October Term 1886.

Ejectment by Herbert A. Johns against C. P. Tiers and G. W. Irwin, for lots 1, 2 and 3 on Johns' plan, Pittsburgh. Plea, not guilty.

In 1879, Herbert A. Johns, the plaintiff, who was then a minor, was the owner of lots Nos. 1, 2 and 3 in Johns' plan,

[Johns *v.* Tiers, et al.]

Seventeenth ward, Pittsburgh. He was also the owner of other valuable real estate, and all of it, including lots Nos. 1, 2 and 3, was encumbered by tax and other liens. Some of the tax liens were filed before the property was subdivided into lots, and required an almost impossible apportionment, and a municipal lien, under the Penn Avenue Act, was filed against an entire frontage, and besides being disputed was, in other respects, difficult of adjustment. Under the circumstances the title was so much clouded as to be unsalable.

His guardian, Levi Bird Duff, and his brother, L. E. Johns, after consultation as to the disposition of the property, concluded that the best thing to do would be to sell lots Nos. 1, 2 and 3 and to make a title to the purchaser by means of a sale for taxes on a city lien, which was then threatened. Accordingly the tax sale was allowed to proceed, and at the sale L. E. Johns bid the lots in for the sum of $150, in the name of his wife, V. M. Johns. Shortly after the sale, and before the sheriff had made a deed to the purchaser, L. E. Johns sold the three lots to the defendants, C. P. Tiers and G. W. Irwin, for the sum of $2,250, cash. At the time of the sale L. E. Johns explained to the defendants the condition of plaintiff's property, that the sale was for his benefit, and how title was to be made. Five dollars was paid on account, and L. E. Johns gave the defendants a receipt, of which the following is a copy:

"Received from C. P. Tiers and G. W. Irwin the sum of five dollars on account of the sale of lots Nos. 1, 2 and 3 on Main street, Seventeenth ward, and extending back 100 feet to a twenty feet alley, being on account of $2,250, to be paid in cash upon the examination of the title, if good, in Johns' plan, and upon receiving guardian's agreement on non-redemption of H. A. Johns, minor.            L. E. JOHNS.

"March 13th, 1880.    "V. M. JOHNS per L. E. JOHNS, Ag't."

For the purpose of carrying out the agreement of sale and to vest the title in the defendants, the vendee, L. E. Johns' went to the sheriff's office and substituted C. P. Tiers for V. M. Johns as bidder, and Tiers paid the sheriff the bid and took a deed for the lots. The title was not yet complete, for the lots were subject to redemption for a year. To enter into an agreement of non-redemption with Levi Bird Duff, the guardian, C. P. Tiers and L. E. Johns visited him at his office, where it was agreed that instead of giving a written stipulation, not to redeem, the guardian should permit the time for redemption to expire, whereby a complete title would be vested in the defendants according to the terms of the receipt. The time for redemption having expired, Levi Bird Duff, the guardian, called upon C. C. Dickey, Esq., attorney for the defend-

ants, and requested payment of the purchase money. It was still objected by Mr. Dickey that the minor's right of redemp‑ tion did not expire until he arrived at his majority. After considerable parley an action of ejectment was brought by Tiers against the guardian to try the title. Subsequently a case stated was agreed upon, and submitted to the court for its decision. Judge COLLIER, before whom the case was argued, decided that the tax sale divested the title of the plaintiff and vested it in C. P. Tiers, one of the defendants. Notwithstand‑ ing this decision Mr. Dickey still objected to the title and desired to have the Supreme Court pass upon it. The guard‑ dian, thereupon, at the request of the defendants and at their expense, took a writ of error and removed the case to the Supreme Court, where the judgment of the lower court was affirmed.

The guardian then called upon Tiers to pay for the lots, which he refused to do, and suit was brought by the guardian against Tiers and Irwin for the purchase money. Tiers filed an affidavit of defence setting up the title to the lots acquired at tax sale, and denying any contract with the guardian. This suit was set down for trial, but before it came to trial, the minor came of age, and the guardian took a nonsuit.

The plaintiff came of age on the 5th day of February, 1885, and on the 16th day of March, 1885, he brought this suit. The defendants again set up the tax title in bar of plaintiff's recovery, and after hearing the whole of the evidence the court directed the jury to find a verdict for the defendants. As to the manner in which the defendants acquired title to the lots the evidence was clear and undisputed. There was no evidence that they ever paid the purchase money to any one, or that they ever offered to pay it to the plaintiff or his guard‑ ian.

The defendant presented, *inter alia*, the following point:

2. That under the pleadings and evidence in this case the defendants are entitled to a verdict.

The court in the general charge instructed the jury:

I fail to recall in the testimony anything to show that the plaintiff in this case was a party to the transactions between his brother, L. E. Johns and his guardian, and these defend‑ ants. In order that he may maintain an action of ejectment it is needful that he should have at least the right of posses‑ sion and I fail to discover anything in the case which would give him, under any circumstances a right to the possession of this property in ejectment, even if only to enforce the payment of the purchase money. [So I affirm the second point on the part of the defendants, that under the pleadings and evidence in this case the defendants are entitled to a ver‑

dict, and your verdict will accordingly be for the defendants.] (Assigned for error.)

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ, assigning for error that portion of the general charge included within brackets.

*T. M. Marshall* (*L. B. D. Resse* with him), for plaintiff in error.—The court wholly misconceived the position of the plaintiff in this case. It was not intended by the evidence offered to overthrow the tax title, but to show that it was obtained by the defendants by such means and under such circumstances as prevented them setting it up against the plaintiff. That a title obtained at judicial sale may be shown to be a trust or a pledge, is well settled in this state: Beegle *v.* Wentz, 55 Pa. St., 369; Cowperthwaite *v.* The Bank, 102 Pa. St., 397.

It is clear that the plaintiff is not bound by the acts of his guardian. A guardian cannot dispose of any part of a ward's realty without the approval of the Orphans' Court: Stoughton's App., 88 Pa. St., 198.

Aside from all the agreements between the parties there is a general rule in equity which covers this case: Perry on Trusts, vol. 1, p. 266, sec. 217, says: "It is a universal rule, that if a man purchases property of a trustee, with notice of the trust, he shall be charged with the same trust in respect to the property as the trustee from whom he purchased." And this rule applies to all transfers of trust property, no matter how made. The defendant, in this case, knowing the plaintiff was a minor, obtained his property by arrangement, or collusion, no matter how, with his brother or his guardian. It is clearly identified and they must surrender it. In such case "It is not necessary that such transferee or purchaser should be guilty of fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires the property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for value without notice": Pomeroy's Equity, vol. 2, page 621, sec. 1048. This rule was enforced in this court in the case of McGinn *v.* Shaeffer, 7 Watts, 412, a case, the facts of which were very similar to this one.

*John D. McKennan*, for defendants in error.—The guardian did not pay the taxes, possibly because he had no money, and they were entered as a lien; he did not satisfy the lien, and the collector of delinquent taxes collected the debt by execution and a judicial sale of the lots, thereby entirely divesting the minor's title. The proceeding was certainly adverse, and its character as an adverse proceeding was not changed by any

arrangement or understanding which Duff and L. E. Johns may have had between themselves as to letting the sale go on, and as to bidding in the property. The guardian's duty was to pay the taxes, if he could, and having failed to do so, the property was sold by the sheriff, and the guardian's control of it ceased.

The second proposition of the plaintiff in error is that the defendants in error are trustees *ex maleficio*. The only impropriety charged to the defendants is that they induced the guardian not to redeem, by promising to pay $2,250 for L. E. Johns' bid. It is not alleged that any fraud was practised at the sheriff's sale by which any one was prevented from bidding, or the guardian in anywise deceived. Such being the fact no resulting trust *ex maleficio* is created: Kellum *v.* Smith, 9 Casey, 164.

The third proposition assumes that the property, when taken by the defendants, was charged with a trust. If any such trust existed, it must have grown out of the alleged arrangement between Duff and L. E. John, and taken effect when the latter's wife bid in the property at sheriff's sale. But even if the guardian and the brother had intended to create a trust they failed, because (1) there was a mere naked agreement, if any between them in which the bidder at the sheriff's sale, V. M. Johns, had no part: Kellum *v.* Smith, 9 Casey, 164; and because (2) the alleged agreement was not in writing, as required by the Act of April 22d, 1856.

Mr. Justice STERRETT delivered the opinion of the court, January 3d, 1887.

In response to the *prima facie* case shown by plaintiff's testimony in chief, defendants gave in evidence a judgment against him in favor of the Collector of Delinquent Taxes for overdue taxes assessed on the lots in dispute, execution therein, sale and conveyance by the sheriff to C. P. Tiers, one of defendants, and then rested. In rebuttal, plaintiff introduced testimony tending to prove, substantially, the several matters of fact embodied in his second, third and fourth points for charge, to wit: that the defendants acquired title to the lots in controversy at sheriff's sale for taxes, during plaintiff's minority, by virtue of a parol agreement with Leonard S. Johns his brother, and Col. Duff his guardian, both acting in his behalf; that his said guardian having the right to redeem said title within one year, waived the right of redemption for the purpose of carrying out the arrangement to divest plaintiff's title and withdraw the proceeds from the grasp of the Orphans' Court, etc. The testimony was such that the jury would have been warranted in finding these facts; and that the sale was pro-

cured, with assent of the guardian, not with the view of enforcing the judgment for taxes, but for the purpose of divesting plaintiff's title without authority from the Orphans' Court, and that defendants acquired the title with full knowledge of the means employed, and their intended purpose. In view of the testimony tending to prove these facts, the court was requested to charge the jury that if they found the facts to be as stated in the points, the defendants hold the title and possession thus acquired, as trustees for plaintiff; and in the absence of any ratification of the transaction by him, after he attained his majority, their verdict should be in his favor. Without, in express terms, refusing to so instruct the jury, the learned judge impliedly did so by affirming defendants' second point and charging the jury, " that, under the pleading and evidence in the case, the defendants are entitled to a verdict." This is complained of as error; and we are of opinion that it was.

. It is not every sale and conveyance of real estate by the sheriff, that vests in his vendee an absolute and indefeasible title, as against the defendant, in the execution under which the sale is effected. If, for example, execution process is resorted to for the purpose of illegally divesting the title of a minor, or any one not *sui juris*, and the purchaser, with knowledge of the illegality of the proceedings, acquires the legal title, he holds it in trust for the person whose property is thus sold and conveyed. Or when, by procurement and with the consent of his guardian a minor's title to realty is divested in any other mode than that prescribed by law, the purchaser taking title with knowledge of the facts, cannot claim to be the *bona fide* holder thereof in his own right, unless the minor, after attaining his majority, has ratified the sale. On the contrary, it is equally clear that when such process is used adversely, and for the purpose of enforcing the judgment on which it is issued, and not by procurement for the purpose of divesting the minor's title, with the concurrence of his guardian but without authority of the Orphans' Court, the purchaser acquires a complete and indefeasible title. These general principles are so familiar that they scarcely need the citation of authorities.

The powers of a guardian in respect of the sale of a ward's realty are purely statutory; and, by express terms of the statutes relating thereto, can only be exercised under and subject to the authority and supervision of the Orphans' Court. As the agent of that court, he derives from it his authority over his ward's estate: to it he is accountable for his management, and consequently must look to it alone for direction. He can do no act affecting the inheritance: Stoughton's Appeal, 88 Pa.

[Johns *v.* Tiers, et al.]

St., 198; nor can he fix boundaries: Brewer *v.* Caldwell, 10 S. & R, 114; or, impose a lien on his ward's realty: Furney's Appeal, 12 W. N. C., 82; or, change its character so as to bind his ward on attaining his majority; or bind his heirs: Davis' Appeal, 60 Pa. St., 118. The propriety of selling or encumbering the minor's realty, how much, if any, should be sold or mortgaged, the prices, terms, etc., are questions which the law expressly leaves to judicial discretion. The guardian is merely the court's agent to carry its decrees into effect.

It must, of course, be conceded that a minor's title may be divested by adverse sale on process issuing out of another court; but this is not such a case: Parshall's Appeal, 65 Pa. St., 224. As we have seen, the jury would have been warranted in finding the guardian was a party to the sale, assenting thereto, and agreeing to let the time for redemption pass. This was all fully known by defendants before they acquired the legal title. They were parties to the arrangement and, therefore, not innocent purchasers without notice. The sale was a mere form to divest title, and had no effect on the beneficial interest of the then minor owner. It would be altogether different if the testimony pointed merely to an adverse proceeding to enforce a tax lien. Duff *v.* Tiers, 15 Pitts. Leg. Journal, 248, as presented to us, was such a case. In that case, arising out of the same judicial sale, but not disclosing the purpose thereof, etc., we decided that a sheriff's sale, under the Pittsburg Tax Act of March 22d, 1877, and failure to redeem within one year, vests a good title in the purchaser, notwithstanding the owner is a minor. That decision is predicated of a *bona fide* purchase under adverse process, not of a procured sale, arranged for the very purpose of divesting the minor's title, with the assent of his guardian and knowledge of the purchaser, and without any authority from the court that should have ordered and supervised the sale, if such sale was necessary.

It does not appear, nor is it necessary that it should, that the minor's brother or his guardian intended anything wrong, or prejudicial to his interest, in the transaction. Any one who knows the guardian will exonerate him from anything like bad-faith, or intentional neglect of his ward's interests. The procurement of a judicial sale on execution, issued by the Court of Common Pleas, for the purpose of divesting the minor's title, without application to and authority from the Orphans' Court, was improper and illegal; and, if the defendants acquired the legal title with knowledge of these facts, they should be treated as trustees of that title for the benefit of the then minor, to whom the property belonged. Such a sale was ineffectual to divest his beneficial interest.

[Spencer *v.* Jennings.]

We refrain from expressing any opinion as to questions that may possibly arise on the re-trial of the cause.

Judgment reversed, and a *venire facias de novo* awarded.